**WO**                                                                                       SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Thomas Edmond Cochran,           )   No. CV 07-1714-PHX-MHM (JRI)
                                 )
    Plaintiff,                   )   **ORDER**
                                 )
vs.                              )
                                 )
Bennie Rollins, et al.,          )
                                 )
    Defendants.                  )
_____  )

       Plaintiff Thomas Edmond Cochran, who is confined at the Arizona State Prison Complex-Florence, filed this civil rights action against various officials of the Arizona Department of Corrections (ADC). Defendants Rollins, Haley, and Moen move to dismiss on the grounds that (1) Plaintiff did not exhaust prison administrative remedies before filing this lawsuit and that (2) claims in Counts I and II are barred by the statute of limitations. (Doc. #18.) The motion is fully briefed.[1] (Doc. ##20, 22, 27, 35, 37.)

       The Court will grant the motion in part and deny it in part. The Court will dismiss Defendants Moen and John Doe #1.

---

[1] After he filed his initial response, the Court sent Plaintiff a Notice pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003). (Doc. #19.) Plaintiff filed an additional response, Defendants filed a supplemental reply, and Plaintiff filed a response to the supplemental reply. (Doc. ##22, 35, 37.)

## I. Background

Plaintiff's Amended Complaint raised four grounds for relief alleging that his Eighth Amendment rights were violated. In Count I, Plaintiff alleged that Moen and Haley failed to prevent an attack on Plaintiff by another inmate in October 2004, and in Count II he alleged that John Doe #1 and Haley failed to protect Plaintiff from an attack by another inmate in June 2005. Plaintiff alleged that in each incident, he provided the named Defendants with detailed information about inmates who were a threat to him (after he renounced his gang affiliation) but that Defendants failed to place those inmates on Plaintiff's "do not house with" (DNHW) list and also failed to place Plaintiff in protective segregation, resulting in Plaintiff suffering multiple assaults by those inmates.

In Count III, Plaintiff alleged that Lakey, Haley, Rollins, and John Doe #1 failed to protect Plaintiff from an attack by another inmate in May 2007, and that Lakey, Haley and Rollins denied Plaintiff placement in protective segregation. In Count IV, Plaintiff alleged that John Doe #2 and John Doe #3 failed to protect Plaintiff from other inmates by refusing to place Plaintiff in protective segregation.

The Court ordered service on Rollins, Moen, Haley, and Lakey;[2] the Court did not dismiss the John Doe Defendants but did not order service on them. (Doc. #13.)

## II. Miscellaneous Motions

Plaintiff made a motion to dismiss Counts III and IV, with leave to amend upon exhaustion. (Doc. #24.) He now moves to withdraw the motion; Defendants do not oppose. (Doc. ##30, 34.) The Court will grant Plaintiff's motion to withdraw his motion to dismiss.

Defendants move to strike Plaintiff's response to Defendants' supplemental reply. (Doc. #38.) The Court will deny the motion. Defendants raise for the first time in their supplemental reply that there is a separate grievance process for denials of placement in protective segregation. Although Defendants initially sought dismissal of the entire Complaint, in their reply they state that they take no position as to Count IV (refusal to place in protective segregation). (Doc. #18 at 1; Doc. #22 at 2 n. 2) It appears to the Court that

---

[2] Lakey has not yet been served. (Doc. ##14, 28, 37.)

- 2 -

1 some allegations in Count III also raise separate claims regarding denial of protective
2 segregation. Plaintiff submits documents showing that he availed himself of this other
3 grievance process. The Court will, therefore, consider his response to Defendants'
4 supplemental reply.

**III. Motion to Dismiss for Failure to Exhaust**

**1. Legal Standard**

Plaintiff must first exhaust "available" administrative remedies before bringing this action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, courts have broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (citation omitted).

**2. Parties' Contentions**

Defendants assert that Plaintiff did not properly exhaust his administrative remedies. In support of their motion, Defendants submit the affidavit of Aurora Aguilar, ADC Hearing Officer (Doc. #18, Ex. A, Aguilar Aff. ¶ 1); and ADC Department Order (DO) 802, Inmate Grievance System—the procedures for the standard inmate administrative grievance process (id., Aguilar Aff., Attach. 1).

The DO provides a four-step standard-grievance process, which is generally as follows: (1) an inmate must submit an inmate letter to his assigned Correctional Officer

1  (C.O.) III, attempting to informally resolve a complaint within 10 days after becoming aware
2  of a problem; (2) if the inmate is not satisfied with the response, he may file a formal
3  grievance to the Grievance Coordinator within 10 calendar days of receipt of the response
4  to the inmate letter; (3) if the inmate is not satisfied with that response, he may file a
5  grievance appeal to a higher official—the Deputy Warden or Warden—within 10 calendar
6  days of the receipt of the Coordinator's response; and (4) if the inmate is not satisfied with
7  the response to his grievance appeal, he may appeal to the ADC Director within 10 calendar
8  days of receipt of the response from the Warden or Deputy Warden.  The Director has 30
9  days from receipt to respond to an appeal.  (Id.) DO 802.07 § 1.2.4 provides that expiration
10 of the time limit at any level of the grievance process entitles the inmate to proceed to the
11 next level of review.  (Id.)

12     Aguilar attests that, during the period from January 2001 to January 2008, Plaintiff
13 did not complete any grievance all the way through to an appeal to the Director.  (Id., Ex. A,
14 Aguilar Aff. ¶ 11.)  Defendants argue that because Plaintiff did not file a Director's Appeal
15 regarding the claims in the Complaint, Plaintiff failed to exhaust his remedies.  (Doc. #18 at
16 6.)

17     In his response, Plaintiff asserts that he exhausted the remedies available to him, but
18 that ADC staff prevented him from appealing.  (Doc. # 20 at 3.)  Plaintiff asserts that on July
19 3, 2007, he wrote an informal resolution to CO III Woods, who did not respond.  Plaintiff
20 then filed a grievance, which stated that he was proceeding to the next level.  (Id.)  Staff
21 refused to process the grievance for failure to attempt an informal resolution.  (Id.)  Plaintiff
22 proceeded to the next level—appeal to the Warden.  ADC staff again refused to process the
23 grievance appeal.  Plaintiff submits an Inmate Letter, dated July 7, 2007 (id., Ex. A); a
24 Grievance, dated July 24, 2007 (id., Ex. B); Grievance response, dated July 30, 2007 (id., Ex.
25 C); Grievance Appeal dated August 14, 2007 (id., Ex. D); and Inmate Letter response dated
26 August 16, 2007 (id., Ex. E).

27     In his supplemental response, Plaintiff submits additional documentation: Protective
28 Segregation Appeal, dated February 28, 2006 (Doc. #27, Ex. H); Inmate Letter Response,

- 4 -

1  dated March 17, 2008 (id., Ex. I); and Inmate Letter Response dated March 14, 2008 (id., Ex.
2  J). In the Protective Segregation Appeal, Rollins indicates that he reviewed Plaintiff's appeal
3  dated February 16, 2006.  The March 17, 2008 Inmate Letter Response states that Plaintiff
4  has been through the DI 67 process four times and "appealed the decision to the highest
5  authority.  You received the last appeal from Deputy Division Director Rollins.  You have
6  exhausted your administrative remedies with this process."  The Inmate Letter Response
7  dated March 14, 2008, states that the grievance in reference to a request for DI 67 is being
8  returned unprocessed because DI 67 has its own appeals process.

9        In their reply, Defendants argue that Plaintiff's attempts at exhaustion are not related
10 to the incidents in Counts I through III of the Amended Complaint.  (Doc. #22 at 3.)  They
11 argue that Plaintiff's exhibit A, for example, relates to his multiple requests to be placed in
12 protective segregation, does not specify any of the assaults about which Plaintiff complained
13 in the Amended Complaint, and was commenced well after the time to begin the
14 administrative process.   (Id.)  They assert that the Inmate Letter and Grievance, both dated
15 July 2007, are not timely as to the specific incidents of October 2004, June 2005, or May
16 2007 and do not put prison officials on notice of the events of those dates.  (Id. at 4-5,
17 referring to Doc. #20, Ex. A, B.)

18       In their supplemental reply, Defendants assert that Plaintiff's exhibits H, I, and J show
19 that Plaintiff appealed the denial of a request for protective segregation through the ADC
20 "Director's Instruction 67" (DI 67) process but that this process is unrelated to the process
21 required for the allegations in Counts I through III of the Amended Complaint.  (Doc. #35
22 at 2.)  They assert that DI 67, "Protective Segregation," provides procedures for identifying
23 and safeguarding inmates who need protection and contains its own appeal process.  (Id.)
24 They submit a copy of DI 67, which includes § 805.07 setting forth the procedures for
25 appealing a protective segregation determination.  (Id., Ex. A "Appeals on PS Issues.") They
26 argue that the allegations in Counts I through III do not concern placement in or release from
27 protective segregation; rather, these allegations concern conditions of confinement for which
28 Plaintiff must use DO 802 procedures.

- 5 -

1    Plaintiff submits a response to Defendants' supplemental reply in which he argues that
2 Plaintiff's DI 67 appeal was denied by Rollins on February 28, 2006 resulting in Plaintiff
3 being housed at Ryman where he was assaulted on May 25, 2007; Plaintiff argues that this
4 makes the document relevant and related to the claims before the Court. (Doc. #37 at 3.).

**IV.    Analysis**

    **A.    Counts I, II, and IV**

As to Counts I and II, the Court finds that Defendants have established the availability of a grievance process and that the Plaintiff failed to exhaust his remedies. The gravamen of each of these counts is the assault, which resulted from the failure to protect Plaintiff when Defendants failed to place him in protective segregation and housed him with inmates on his DNHW list. He alleges that the assaults occurred in October 2004 and June 2005.

Plaintiff offers no evidence that he exhausted his remedies as to these matters. Plaintiff asserts that in July 2007, he submitted an informal grievance to CO II Woods, who did not respond. The Court has examined the documents that Plaintiff submits with his responses to the Motion to Dismiss; grievance documents exhibits A through E and G contain no reference to these assaults.[3] Thus, they provide Defendants with no notice regarding the assaults. See Porter, 534 U.S. at 525 (PLRA's purpose is to allow officials time and opportunity to address the complaint prior to the filing of a lawsuit). Moreover, as Defendants point out, the grievances are not timely as to the allegations in Counts I and II because they were filed much later than 10 days from the dates of the 2004 and 2005 assaults. Nor does Plaintiff assert or submit evidence that he exhausted, or attempted to exhaust, claims for denial of protective segregation using the DI 67 grievance process. The Court will, therefore, dismiss Counts I and II.

With regard to Count IV, the Court notes that Defendants now take no position as to exhaustion of claims in this count against John Does ## 2 and 3. (Doc. #35 at 1 n.2.) Count IV will not be dismissed.

---

[3] Exhibit F is the Court's initial screening Order, dated September 28, 2007. (Doc. #20, Ex. F.)

- 6 -

### B.     Count III

Count III is more problematic because the allegations in this Count are slightly different than those in Counts I and II and because Defendants provide different grievances processes for very similar types of claims. Specifically, Defendants contend that a failure to protect that leads to assault must be exhausted under DO 802 but a denial of protective segregation, including one that leads to assault, must be exhausted under DI 67. In addition, the record shows that both Plaintiff and prison officials confused the applicable grievance processes.

Like Counts I and II, Count III also alleges that Defendants failed to place Plaintiff in protective segregation and housed him with inmates on his DNHW list and that he was assaulted as a result. But the allegations in paragraphs 4 and 8 through 11 allege not only that Plaintiff was assaulted in May 2007, but specifically and separately allege that Lakey, Haley, and Rollins failed to place Plaintiff in protective segregation. Moreover, Plaintiff specifically refers to his February 16, 2006 protective segregation appeal. Thus, Count III contains claims regarding both a failure to protect resulting in an assault and a denial of protective segregation resulting in an assault. See Haines v. Kerner, 404 U.S. 519 (1972) *(pro se* pleadings are liberally construed).

### 1.     Failure to Protect

The Court finds that to the extent that Count III alleges that Defendants' failure to protect Plaintiff resulted in an assault in May 2007, Defendants have met their burden to show that Plaintiff did not exhaust the standard grievance procedure. Plaintiff's Inmate Letter, dated August 21, 2007, and labeled "DI 67 Appeal," does, in fact, mention the May 27, 2007 assault. (Doc. #20, Ex. G.) This document appears to be Plaintiff's attempt to appeal previous grievances and responses—exhibits A through E, dated from July 3, 2007 through August 16, 2007. (Id. Ex. A-E.) But these earlier grievance documents do not mention the May 2007 assault or housing Plaintiff with inmates on his DNHW list. (Id.) As Defendants contend, in these additional grievance documents, Plaintiff complained about failure to place him in protective segregation, not about a general failure to protect him or

- 7 -

1 assault. The Court notes that prison officials' responses seem to have muddled this matter
2 by referring Plaintiff to DO 802 grievance procedures instead of DI 67 procedures. (Id., Ex.
3 C and E.) Nevertheless, as Defendants point out, all of these grievance documents were filed
4 well after the time permitted to file a grievance regarding failure to protect leading to the
5 May 2007 assault. Plaintiff's additional exhibits—H through J—do not refer to the May
6 2007 assault. Thus, Plaintiff failed to properly exhaust the standard grievance procedure as
7 to the alleged failure to protect that resulted in the May 2007 assault.

### 2. Denial of Protective Segregation

But the allegations in paragraphs 4 and 8 through 11 of Count III allege that Lakey, Haley, and Rollins denied Plaintiff's request to be placed in protective segregation, that this led to Plaintiff's assault, and that Plaintiff appealed this determination. Defendants have not met their burden to establish that Plaintiff failed to exhaust these claims. They do not claim or submit evidence that Plaintiff's February 2006 appeal was untimely regarding the denial of placement in protective segregation. Section 805.07 1.1.4 ( the actual appeals process for protective segregation and contained in DI 67) indicates that the final level of appeal is to the Deputy Director of Prison Operations. (Doc. #35, Ex. A.) The Protective Segregation Appeal response from Rollins indicates that he is the Southern Region Operations Director. (Doc. #27, Ex. H.) Although not conclusive, it appears that Plaintiff exhausted the DI 67 process as to the denial of protective segregation referred to in Count III. Defendants have not met their burden to demonstrate otherwise.[4]

### C. Dismissed Claims and Defendants

In sum, the Court will dismiss, without prejudice, the claims in Counts I and II. The Court will also dismiss Count III to the extent that it alleges that Defendants' failure to protect Plaintiff resulted in his assault in May 2007. However, the Court will not dismiss paragraphs 4 and 8 through 11 of Count III, which allege that Defendants' denial of

---

[4] Because Count IV refers to a May 2007 protective segregation investigation, it appears that the denial of protective segregation referred to in Count III is for a different protective segregation request.

- 8 -

1  Plaintiff's request for placement in protective segregation resulted in his assault in May 2007.
2  Because no claims remain against Moen, the Court will dismiss him.

3  Plaintiff has not yet served Defendant John Doe #1. The claims regarding John Doe
4  #1 arise out of the same facts as claims that will be dismissed for failure to exhaust.  The
5  Court finds that because Plaintiff did not exhaust his remedies as to such claims, it would be
6  futile to permit an extension of time for service of the Amended Complaint in order to
7  proceed against John Doe #1, and the Court will dismiss him.

8  **IT IS ORDERED:**

9  (1)  Plaintiff's Motion to Withdraw his Motion to Dismiss (Doc. #30) is **granted**
10  and his Motion to Dismiss (Doc. #24) is **denied** as moot.

11  (2)  Defendants' Motion to Strike (Doc. #38) is **denied.**

12  (3)  Defendants' Motion to Dismiss (Doc. #18) is **granted** in part as follows:

13  (a)  Counts I and II are **dismissed** without prejudice;

14  (b)  Count III is **dismissed** without prejudice to the extent that it alleges that
15  Defendants' failure to protect Plaintiff resulted in his assault in May 2007.

16  (c)  Defendants Moen and John Doe #1 are **dismissed**.

17  (4)  Defendants' Motion to Dismiss (Doc. #18) is **denied** to the extent that
18  paragraphs 4 and 8 through 11 in Count III allege denial of Plaintiff's request for placement
19  in protective segregation, which resulted in his assault in May 2007.

20  (5)  The remaining claims are (a) paragraphs 4 and 8 though 11 of Count III
21  alleging denial of placement in protective segregation and (b) Count IV.

22  (6)  The remaining Defendants are Lakey, Haley, Rollins, John Doe #2, and John
23  Doe #3.

24  DATED this 25th day of July, 2008.

_____
Mary H. Murguia
United States District Judge